IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIO PEARSON, | : |
| Plaintiff | : |
| | : CIVIL NO. 1:CV-13-1733 |
| vs. | : |
| | : (Judge Caldwell) |
| DAVID VARANO, *et al.*, | : |
| Defendants | : |

*M E M O R A N D U M*

I.  *Introduction*

The pro se plaintiff, Antonio Pearson, a state inmate, filed this civil-rights lawsuit alleging that during his employment in the dietary department at the state correctional institution in Coal Township, Pennsylvania, defendants paid him differently than similarly situated inmates with respect to his compensation for hours worked. (Doc. 1, Compl.). Plaintiff asserts federal and state-law claims. Presently before the court is the Pennsylvania Department of Corrections (DOC) Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 27, Mot. to Dismiss). The "DOC defendants" are defendants Varano, Wetzel, Moore-Smeal, Klopotoski, Varner, Baker, Ellet,[1] McMillian, Shedleski and Snyder.

The motion to dismiss argues as follows: (1) the DOC defendants are entitled to qualified immunity; (2) Plaintiff fails to state an equal protection claim; (3) Plaintiff fails to allege the personal involvement of several of the administrative level defendants; and (4)

---

[1] Spelled "Ellett" by Plaintiff.

the court should decline to exercise supplemental jurisdiction over the state-law claims. (Doc. 28, Defs.' Br. in Supp. Mot. to Dismiss).

For the reasons discussed below, we will deny the DOC defendants' motion to dismiss.

II.   *Standard of Review*

Fed. R. Civ. P. 12(b)(6) authorizes the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Under Fed. R. Civ. P. 12(b)(6), the district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff is entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim, " Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "[L]abels and conclusions" are not enough, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965.

With this standard in mind, the following is the background to this litigation, as Plaintiff alleges it.

III.  *Background*

Pearson worked in SCI-Coal Township's dietary department from December 25, 2010, until at least June 2013.  (Doc 1, ECF p. 5).[2]  He alleges that although he worked eight hours and forty-five minutes a day, 10 a.m. until 6:45 p.m., he was only paid for eight hours.  (*Id.*).

> All other shifts get paid 8 hours but work less than 8 hours or exactly 8 hours.  The 4:00 a.m. to 10:45 a.m. shift works 7 hours but get[s] paid for 8 hours and the 5:00 a.m. shift to 1:00 p.m. shift works 8 hours and gets paid for 8 hours.  All shifts get the same amount of breaks and when the other shifts work past their 8 hour shifts they get overtime pay for them.

(*Id.*).  According to DOC policy, inmates are not permitted to work in excess of eight hours, but Plaintiff alleges he routinely works eight hours and forty-five minutes daily.  (*Id.*, ¶ 24, ECF p. 11).  Pearson claims that he cannot leave the work site without approval of his supervisor or unless he is placed on a "call-out" sheet for an approved pass.  Non-defendant prison security staff have threatened him with a misconduct when he has returned to his housing unit early on occasion.  (*Id.*, ECF p. 6).  Once at his work station, he, like other workers on the 10:00 a.m. to 6:45 p.m. shift, is required to do "anything that he is told to do or be subject to a misconduct."  (*Id.*)

---

[2]  At the time Pearson filed his Complaint, he was housed at SCI-Coal Township, where the alleged events took place.  Pearson is currently housed at SCI-Greene, in Waynesburg, Pennsylvania. (Doc. 34).

-3-

When Pearson spoke with Food Service Managers Shedleski and Snyder about "how [he] is being treated differently th[a]n other kitchen workers, that work other shifts, and how they get paid for 8 hours of work even though they work less then 8 hours or only work 8 hours but get paid for 8 hours and the plaintiff only gets 8 hours for 8 hours and 45 minutes of work . . . Defendant Shedleski told [him] not to worry about other shifts and to worry about [his] shift and [him]self, because what other shifts get doesn't matter." (*Id.*, ECF p. 13).

When Pearson spoke with Deputy Superintendent Miller about this issue, Deputy Miller told him "if [he] was not happy working in the kitchen that [he] could always be removed." (*Id.*) When he approached defendant McMillian, he was told "that this is how the kitchen is ran and they are not going to change it just for [him]." (*Id.*) When Pearson spoke with Deputy Superintendent Ellet, she told him to write to her and she would "see what the reasons for this" were, but Pearson never heard from her after he wrote her. (*Id.*)

While at the 2012 Triumph Banquet, Pearson spoke to Executive Deputy Shirley Moore-Smeal and Eastern Regional Deputy Secretary Michael Klopotosky, who told him to write to them and they would look into the situation. However, after writing to both, he never received a response from either defendant. (*Id.*, ECF p. 14). When Pearson wrote to Secretary Wetzel regarding this matter, Eastern Regional Assistant Baker responded to the inquiry but failed to stop the continuing constitutional violations from occurring. (*Id.*, ECF p. 15). Defendant Varner "has a duty to stop Constitutional violations that the defendants were perpetrating against" him but failed to do so when she upheld his grievance concerning this issue at Final Review. (*Id.*)

Pearson alleges Due Process, Equal Protection and discrimination claims. (*Id.*, ECF p. 7 and p. 16).  He claims defendants' discrimination is "motivated by racial or otherwise class based invidious discrimination." (*Id.*)  He also makes a state-law claim, alleging defendants violated Section 5301 of the Pennsylvania Crimes Code which relates to official oppression and other state statutes. (*Id.*)  Pearson seeks compensatory and punitive damages from all defendants. (*Id.*, ECF p. 16).

IV.   *Discussion*

   A.   *Due Process Claim*

The Complaint sets forth a due process claim. (Doc. 1, ¶ 27, ECF p. 8).  The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Mulholland v. Gov't Cnty of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013)(quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)).  If there is no protected liberty or property interest, it is unnecessary to determine if the procedures available to Plaintiff, if any, provided due process.  For Pearson to make out a successful due process claim, he must base it on an enforceable liberty or property interest.  Thus, the question is whether a prisoner has a liberty or property right to compensation for his post-conviction prison labor.

In moving to dismiss the due-process claim, Defendants point out that prisoners have no Fourteenth Amendment liberty or property interest in payment for their work. *See Dmytryszyn v. Hickenlooper*, 527 F. App'x 757, 760 (10th Cir. 2013)(nonprecedential)(inmate's Thirteenth Amendment and due process rights not violated when he was required to work for payment below minimum wage); *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010)("A prisoner has no basis for asserting a violation of due process simply because he is made or allowed to work for low pay as punishment for a crime of which he was lawfully convicted,"); *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985)(holding that the state does not deprive a prisoner of a constitutionally protected liberty interest by forcing him to work without pay); *Murray v. Mississippi Dep't Corr.*, 911 F.2d 1167, 1167-68 (5th Cir. 1990)(same); *Johnson v. Townsend*, 314 F. App'x 436, 440 (3d Cir. 2008)(nonprecedential)(inmates do not "have a constitutional right to compensation").

In his opposition brief, Pearson maintains he is not asserting a due process claim. *See* Doc. 37, ECF p. 7. He is mistaken, as our cite to his Complaint shows. His due process claim will therefore be dismissed. Further, we will not allow amendment of this claim as any amendment would be futile.

B. *Pearson's Equal Protection Claim*

The Equal Protection Clause of the Fourteenth Amendment directs that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Equal Protection Clause requires "that all persons similarly situated should be treated alike." *City of Cleburne, Tex v. Cleburne Living Ctr.*,

473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).  "'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074-75, 145 L.Ed.2d 1060 (2000)(quoting *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923)).

   Pearson does not allege an equal protection claim based on his membership in a "suspect class."  *See Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).  Instead, he makes a "class of one" equal protection claim, that he was intentionally treated differently by the defendants from others similarly situated without a rational basis for such treatment.  *Olech*, 528 U.S. at 564, 120 S.Ct. at 1074.  As the Third Circuit has put it, to state a claim under the class-of-one theory, a plaintiff must show that "'(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)(quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)).

   In moving to dismiss Plaintiff's "class of one" claim, the DOC Defendants make two arguments.  First, Plaintiff has not alleged that he is similarly situated to inmates being given higher pay because he alleges that those other inmates are on a different shift.  We reject this argument.  As the defendants note, "[p]ersons are similarly situated under the Equal Protection Clause when they are alike "in all relevant aspects.'"  *Spiker v. Whittaker*, 553 F. App'x 275, 280 (3d Cir. 2014)(nonprecedential)(quoting *Startzell v. City of*

-7-

*Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)).  Merely because other inmates are on a different shift or shifts does not mean that they are not similarly situated to Pearson as he suggests the different shifts are not relevant to his claim.  Defendants' citation to *Matsey v. Westmoreland Cnty.*, 185 F. App'x 126, 130 (3d Cir. 2006)(nonprecedential), does not assist them.  It was shown there on summary judgment, among other things, that the plaintiff's duties as a prison night shift commander were different from those of the day shift commanders.  At the motion-to-dismiss stage here, there is no such differentiating evidence before the court.

Second, the DOC Defendants argue that the equal protection claim fails because Plaintiff does not allege that they intended to discriminate.  We disagree.  On a "class of one" claim, a plaintiff need only prove that the conduct was intentional, not that there was an intent to discriminate.  A plaintiff need only prove that he "has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Matsey*, *supra*, 185 F. App'x at 130 (quoting *Olech*).  *See also Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)("The Supreme Court has held that a class of one can attack intentionally different treatment if it is irrational and wholly arbitrary.")(quoting *Olech*)(internal quotation marks omitted).

    C.    *State Law Claims*

Pearson asserts defendants have also violated the following state laws:  18 PA. CONS. STAT. ANN. 5301 (official oppression); 71 PA. CONS. STAT. ANN. 1481 (concerning industries and labor in penal institutions); and 61 PA. CONS. STAT. ANN. 3104

-8-

(addressing inmate labor in county correctional institutions).  Pearson relies upon supplemental jurisdiction to support this court's jurisdiction over these state law claims. (Doc. 1, ECF p. 16).

With respect to Pearson's request to have the defendants' criminally prosecuted for official oppression, or any other criminal statute, neither he nor this court has the authority to initiate such proceedings.  The decision to prosecute and the criminal charges to bring are decisions that generally rest in the prosecutor's, not the court's, discretion.  *See United States v. Batchelder*, 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979); *United States v. Santtini*, 963 F.2d 585, 596 n. 4 (3d Cir. 1992).  Claim based on these statutory sections will therefore be dismissed.  The remaining state-law claims will be permitted to proceed.

### D.   *Qualified Immunity*

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see also Acierno v. Cloutier*, 40 F.3d 597, 616 (3d Cir. 1994).  In determining whether defendants are entitled to qualified immunity, the court should engage in a three-part inquiry: (1) whether plaintiff alleged a violation of his constitutional rights; (2) whether the

-9-

right alleged to have been violated was clearly established in the existing law at the time of violation; and (3) whether a reasonable official knew or should have known that the alleged action violated the plaintiff's rights. *Rouse v. Plantier*, 182 F.3d 192, 196-97 (3d Cir. 1999).

Here, Pearson's complaint sufficiently alleges an equal protection claim. His complaint specifically alleges that the defendants knew they were treating him differently than other kitchen workers. At this point in the case, at which we must accept all factual allegations as true and draw all reasonable inferences in Pearson's favor, the Complaint suffices to allege an equal protection violation. A determination as to defendants' qualified immunity defense is more appropriate for summary judgement. Therefore, it will be denied without prejudice at the motion-to-dismiss stage.

An appropriate order follows.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: March 2, 2015